1 | **COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS, LLP**
2 | Rupert P. Hansen (SBN 82302)
Max L. Kelley (SBN 205943)
3 | 190 The Embarcadero
San Francisco, CA 94105
4 | Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601
5 |
6 | Attorneys for Plaintiff OCTAVIAN MARKA LLC

7 | UNITED STATES DISTRICT COURT
8 | NORTHERN DISTRICT OF CALIFORNIA

9 | OCTAVIAN MARKA LLC, ) Case No.: CV13-2863 SC
10 | Plaintiff, ) **IN ADMIRALTY**
11 | v. ) **DECLARATION OF OMER**
) **DONNERSTEIN IN SUPPORT OF**
12 | MARKA SHIPPING LTD., *in personam,* ) **PLAINTIFF OCTAVIAN MARKA**
and M/T MARKA, IMO no. 9512484, her ) **LLC'S RENEWED** *EX PARTE*
13 | engines, tackle, gear, and appurtenances, *in* ) **APPLICATION FOR AN ORDER**
*rem,* ) **RELEASING THE** *IN REM*
14 | ) **DEFENDANT VESSEL FROM**
Defendants. ) **ARREST AND FOR DISMISSAL OF**
15 | ) **ACTION WITHOUT PREJUDICE**
16 | ) **SUPP. F.R.C.P., Rules E(5)(d), and**
17 | ) **F.R.C.P. 41 (a)**

**DECLARATION IN SUPPORT**
**OF RENEWED** *EX PARTE* **APPLICATION**

I, OMMER DONNERSTEIN, declare:

1.     I am Vice President and Company Secretary of OCTAVIAN MARITIME

HOLDINGS INC ("OCTAVIAN HOLDINGS"), the sole member and manager of plaintiff

OCTAVIAN MARKA LLC ("OCTAVIAN MARKA"). I have personal knowledge of the

matters stated herein based on my service as Vice President and Company Secretary of

OCTAVIAN HOLDINGS and my day-to-day involvement with OCTAVIAN MARKA.

////

2.      Plaintiff OCTAVIAN MARKA is a single purpose entity which owns the defendant vessel, M/T MARKA.

3.      At all times material to the complaint filed in this action by plaintiff OCTAVIAN MARKA, defendant MARKA SHIPPING LTD ("MARKA SHIPPING"), was the bareboat charterer of the M/T MARKA.  As part of a confidential settlement, defendant MARKA SHIPPING, relinquished all its legal rights to the M/T MARKA to plaintiff OCTAVIAN MARKA.  A true and correct copy of that confidential Settlement Agreement with the financial terms redacted is attached hereto as Exhbit 2.  Pursuant to this court's order dated August 5, 2013, a true and correct unredacted copy of the Settlement Agreeement is being filed under seal with the Court to protect its commercial confidentiality.

3.      Attached hereto as Exhibit 3 is a true and correct copy of a Delivery Reciept for the M/T MARKA from MARKA SHIPPING to plaintiff OCTAVIAN MARKA,which will be effective upon the M/T MARKA's release from its arrest and custody with the court appointed substitute custodian.

4.      Release of the arrest of the defendant vessel M/T MARKA will help avoid mechanical deterioration as the vessel has been idle and under arrest for 45 days, and vessel machinery works best when it is actively used.  Additionally, the daily cost to OCTAVIAN MARKA of the defendant vessel's arrest is $11,900.50 (comprised of lost hire, $7,500/day; custodial costs, $800.50/ day; Fuel 3 tons per day @ $1,200/ton, $3,600).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 6th day of August, 2013, at New York, New York.

_____
OMMER DONNERSTEIN

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL:  415-438-4600
FAX: 415-438-4601

HS.Varanno

DECLARATION OF OMER DONNERSTEIN IN SUPPORT OF RENEWED EX PARTE APPLICATION FOR RELEASE OF VESSEL
FROM ARREST AND DISMISSAL WITHOUT PREJUDICE

**VESSEL**      : M/T MARKA
**PORT OF REG :** VALLETTA / 9512484

## RE- DELIVERY CERTIFICATE

<u>TO: WHOM IT MAY CONCERN</u>

THIS IS TO KINDLY INFORM YOU THAT **M/T MARKA** UNDER MY COMMAND IS RE-DELIVER TO OWNERS MESSRS. **"OCTAVIAN MARKA LLC"** AT SAN FRANCISCO BAY ANCHORAGE 12, CA IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE GOVERNING BAREBOAT CHARTERPARTY DATED **20TH APRIL 2012** WITH THE FOLLOWING DETAILS;

**RE-DELIVERY DATE&TIME:**
03/08/2013 12:00 LOCAL TIME (GMT +7)
03/08/2013 19:00 GMT

**RE-DELIVERY BUNKERS:**
HSHFO : 1085.22 MT
LSFO  :   142.43 MT
MGO   :    30.08 MT

_____

**MASTER**
M/T MARKA
CAPT. ADNAN AYDIN
SHIP STAMP

_____

REPRESENTATIVE OF OCTAVIAN
MARKA LLC
CPT PETER SWIFT


EXHIBIT 3
PAGE 1 OF 2

## APPENDIX C – FORM OF PROTOCOL OF REDELIVERY AND ACCEPTANCE

Date: [●] 2013   03.08.2013

Time: [●][a][p].m. [●] Time   1200 Lt

Place:   San Francisco Bay #12 Anchorage Area

M.C.P
Cep 2
Pi 3

### m.v. MARKA (the "Vessel")

Marka

~~Enjoy~~ Shipping Ltd., a limited liability company incorporated in Malta with its registered office at 198 Old Bakery Street, VLT1455, Valletta, Malta (the **"Charterer"**) hereby redelivers to Octavian Marka LLC a limited liability company formed in the Republic of the Marshall Islands with its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, The Republic of the Marshall Islands (the **"Owner"**) the Vessel, and the Owner accepts redelivery of the Vessel on the date and at the time and place referred to in this Protocol:

(c)    pursuant to a bareboat charterparty dated 20 April 2012 (the **"Charter"**) over the Vessel and made between the Charterer and the Owner; and

(d)    in accordance with a settlement agreement dated 15 July 2013 (the **"Settlement Agreement"**) and made, between the Owner, Octavian Maritime Enjoy LLC (**"Octavian Enjoy"**), the Charterer, Geden Holdings Ltd. of Malta (**"Geden"**) and Enjoyy Shipping Ltd. ("Enjoy" and together with the Charterer and Geden, the **"Geden Parties"**).

2.    By countersigning this Protocol, each of the Owner and hereby agrees and acknowledges that the obligations of the Geden Parties (owed to the Owner) under or in connection with clause 2(b) of the Settlement Agreement are satisfied solely insofar as such section provides for a cancellation of the Charter.

**Marka Shipping Ltd.**
(as Charterer)
Name: Cpt. M. Celal PINARLI
Title: Sup. int.

**Octavian Marka LLC**
(as Owner)
Name: PETER J. VW.Fr
Title: TECHNICAL ADVISOR

C:\Documents and Settings\rutkowsk\Desktop\Escrow Agreement (3).doc

EXHIBIT 3
PAGE 2 OF 2



ORIGINAL
REDACTED

## Confidential Settlement Agreement and Mutual Release

This Confidential Settlement Agreement and Mutual Release ("Agreement")

made as of July 15, 2013, is by and between Octavian Marka LLC, a Marshall Islands limited

liability company ("Octavian Marka"), Octavian Maritime Enjoy LLC, a Marshall Islands

limited liability company ("Octavian Enjoy" and, together with Octavian Marka, "Octavian"), on

the one hand, and Marka Shipping Ltd., a Maltese limited liability company ("Marka Shipping"),

Enjoy Shipping Ltd., a Maltese limited liability company ("Enjoy Shipping" and, together with

Marka Shipping, the "Charterers"), Geden Holdings Ltd., a Maltese limited liability company

("Geden Holdings" and, together with the Charterers, the "Geden Parties") on the other hand

(collectively, the "Parties").

WHEREAS, Octavian Marka is the owner of the vessel M/T MARKA, IMO no.

9512484 (the "MARKA"); and

WHEREAS, Octavian Enjoy is the owner of the vessel M/T ENJOY, IMO no.

9471329 (the "ENJOY" and, together with the MARKA, the "Vessels"); and

WHEREAS, under a bareboat charter agreement dated April 20, 2012 (the

"Marka Charter"), Marka Shipping bareboat chartered the MARKA; and

WHEREAS, under a sub-charter agreement dated May 15, 2012 (the "Marka Sub-

Charter"), Marka Shipping has sub-chartered the MARKA to Panamax International ("Panamax

International"); and

WHEREAS, under a bareboat charter agreement dated March 31, 2011 (the

"Enjoy Charter" and, together with the Marka Charter, the "Charters"), Enjoy Shipping bareboat

chartered the ENJOY; and

WHEREAS, under a sub-charter agreement dated March 22, 2012 (as amended,

the "Enjoy Sub-Charter" and, together with the Marka Sub-Charter, the "Existing Sub-Charters"), Enjoy Shipping sub-chartered the ENJOY to Chartering and Shipping Services SA ("CSS" and, together with Panamax International, the "Existing Sub-Charterers"); and

WHEREAS, Genel Denizcilik Nakliyati A.S. ("Geden Lines") currently serves as the technical manager for the Vessels pursuant to certain management agreements by and between Geden Lines and Marka Shipping and Enjoy Shipping, respectively (the "Existing Management Agreements"); and

WHEREAS, pursuant to Memoranda of Agreement dated April 20, 2012 and March 31, 2011, respectively (together, the "MOAs"), Octavian Marka and Octavian Enjoy took delivery of the MARKA and ENJOY, respectively, and a portion of the purchase by Octavian Marka and Octavian Enjoy, respectively, was financed through deferred seller's loans from Marka Shipping, as Seller, to Octavian Marka, as purchaser in the amount of ▮▮▮▮▮▮▮▮▮ and Enjoy Shipping, as Seller, to Octavian Enjoy, as purchaser in the amount of ▮▮▮▮▮▮▮▮▮ (collectively, the "Notes"); and

WHEREAS, Marka Shipping has defaulted on its payment obligations under the Marka Charter and notices of termination were duly given under the Marka Charter on or about June 17, 2013 claiming termination payments due and unpaid of ▮▮▮▮▮▮▮ which amount continues to increase (the "Marka Termination Payment"); and

WHEREAS, Enjoy Shipping has defaulted on its payment obligations under the Enjoy Charter and notices of termination were duly given under the Enjoy Charter on or about June 17, 2013 claiming termination payments due and unpaid of ▮▮▮▮▮▮ which continues to increase (the "Enjoy Termination Payment" and together with the Marka Termination Payment the "Aggregate Termination Payment"); and

WHEREAS, on June 20, 2013, Octavian Marka filed a Verified Complaint with

2



the United States District Court for the Northern District of California (the "District Court"), captioned *Octavian Marka LLC v. Marka Shipping Ltd., in personam, and M/T MARKA, IMO no. 9512484, her engines, tackle, gear, and appurtenances, in rem,* 13 CV 2863 (the "Lawsuit"), seeking request for Process of Maritime Arrest of the Vessel pursuant to Rule D of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and held to satisfy Marka Shipping's claims; and

WHEREAS, on June 20, 2013, the District Court issued an order authorizing the U.S. Marshal for the Northern District of California to seize the MARKA, which order, together with the underlying pleadings, was served on the MARKA on June 20, 2013; and

WHEREAS, Octavian Enjoy is prepared to take similar action with respect to the ENJOY; and

WHEREAS, the Parties desire and have agreed to fully and finally settle any and all of the disputes, claims, and issues arising out of or concerning the arrest of the MARKA, the Lawsuit, and any future seizure of the ENJOY and their respective liabilities under the Marka Charter and the Enjoy Charter, on the terms and subject to the conditions set forth below;

NOW, THEREFORE, in consideration of the mutual promises and releases herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. This Agreement shall be effective immediately following the execution by all Parties of this Agreement.

2. <u>Conditions</u>. This Agreement is subject to the following occurring on the date hereof:

(a) Geden Holdings shall remit to Octavian, by wire transfer of immediately available funds to an account designated by Octavian the total of ▓▓▓▓▓▓▓ (the "Settlement

3



Amount"), representing net charter hire less operating expenses i) from 26 May 2013 to 21 June 2013 at $▇▇▇▇▇per day in respect of the MARKA ii ) from 22 May 2013 to 16 July 2013  at $▇▇▇▇▇ per day in respect of the ENJOY;

   (b)  The Marka Charter shall be deemed cancelled effective as of the date hereof. Marka Shipping shall no longer have an interest in the MARKA and the MARKA shall be redelivered by Marka Shipping free and clear of all liens, charges and encumbrances whatsoever other than those created by Octavian Marka or for which Octavian Marka is responsible under the Marka Charter which, for the avoidance of doubt, exclude any claims Panamax International shall have against Marka Shipping arising from the termination of the Marka Sub-Charter, and the Lawsuit.

   (c)  Geden Holdings shall execute and deliver to Octavian Marka and Octavian Enjoy a guarantee in the form annexed hereto as Exhibit A guaranteeing the performance of Geden Lines as the technical manager of the Vessels (as hereinafter described) under the New Management Agreements (as hereinafter described), and Enjoy Shipping in respect of the New Time Charter (as hereinafter described) and Marka Shipping and Enjoy Shipping of their obligations set out in this Agreement (the "Guarantee");

   3.  On or before July 16, 2013:

   (a)  Either (i) Octavian Enjoy, Enjoy Shipping and CSS will enter into a novation agreement (in a form to be agreed) (the "Novation Agreement") novating the Existing Sub-Charter for ENJOY in favor of Octavian Enjoy such that CSS shall be the direct charterer of the ENJOY from Octavian Enjoy and Enjoy Shipping shall no longer have an interest in the ENJOY or (ii) Enjoy Shipping and Octavian Enjoy shall cancel the Enjoy Charter and enter into a time charter for the ENJOY, which time charter shall be a form to be agreed (the "New Time Charter"). In either event, the Enjoy Charter shall be deemed cancelled. In the event that no

4



Novation Agreement is entered into by such date and Enjoy Shipping and Octavian Enjoy enter into the New Time Charter in lieu thereof or in anticipation of a later entry into the Novation Agreement, the New Time Charter shall be based on the "SHELLTIME 4" form and shall provide (A) for a term that is identical to the term contained in the Existing Sub-Charter with respect to such Vessel, (B) for a charter hire rate equal to ███████ per day net of any commissions and fees, and  (C) that Enjoy Shipping shall not extend the term of the Existing Sub-Charter with respect to the ENJOY beyond its current expiry date (the "Charter Termination Date").  In addition, should the New Time Charter be entered into, Enjoy Shipping shall enter into an assignment in the form of Exhibit B hereto in favor of Octavian Enjoy of all of the earnings under the Existing Sub-Charter in respect of the ENJOY.  On the Charter Termination Date, the ENJOY shall be redelivered by ENJOY Shipping free and clear of all liens, charges and encumbrances whatsoever.

(b)      Octavian Marka and Octavian Enjoy shall retain Geden Lines as technical manager of the MARKA and ENJOY, respectively, pursuant to management agreements (the "New Management Agreements") in a form which will be substantially consistent with the terms and conditions of the Existing Management Agreements, except that (i) the term of the New Management Agreement in respect of the ENJOY shall end on the Charter Termination Date; (ii) the New Management Agreement in respect of the MARKA shall be terminable upon one week's written notice from Octavian Marka; and (iii) reimbursement of operating expenses under each New Management Agreement shall be subject to a maximum of ██████ per diem.

(c)  Geden Holdings shall settle any and all claims, costs and expenses that Panamax International has or may have in the future in respect of the Marka Sub-Charter as a result of the MARKA's arrest in San Francisco or any alleged breach of such Sub-Charter, including without limitation the cost of (i) any bunkers consumed by the MARKA and (ii) any



bunker survey conducted by Panamax International during the pendency of the Vessel's arrest and for off-hire as a consequence of MARKA'sarrest.

    5. Releases.

        (a)    Subject to the foregoing conditions and in consideration for the mutual promises contained herein , and other good and valuable consideration, the receipt  and sufficiency of which is hereby acknowledged, Octavian, on behalf of itself and its administrators, executors, and assigns (and/or their related or affiliated entities, their parent entities, subsidiaries, partners, general partners, members, managing members, direct and indirect affiliates, and all other related entities and/or funds or investment partnerships, predecessors, successors and assigns, and each and all of their current and former officers, directors, employees, trustees, agents, attorneys, plan administrators, representatives, partners, members, advisors and shareholders), releases and discharges the Charterers from and with respect to any and all actions, causes of action, claims, judgments, awards, counterclaims, demands, court costs, expenses, attorneys' fees, liabilities, obligations, debts of any kind whatsoever, and all other rights or claims, whether known or unknown, in contract or tort, liquidated or unliquidated, which Octavian, on behalf of itself and its administrators, executors, and assigns (and/or their related or affiliated entities, their parent entities, subsidiaries, partners, general partners, members, managing members, direct and indirect affiliates, and all other related entities and/or funds or investment partnerships, predecessors, successors and assigns, and each and all of their current and former officers, directors, employees, trustees, agents, attorneys, plan administrators, representatives, partners, members, advisors and shareholders) had, now have, shall have or may have against the Charterers relating to, arising out of or concerning any events occurring prior to the date hereof arising out of the Charters, the Vessels, their operation, the Notes, and any other written agreements by and between Octavian and any Geden Party relating to the Charters or the



Vessels and any and all allegations that have been made or could have been made in the Lawsuit. Notwithstanding anything in this Agreement to the contrary, including without limitation, the preceding release, Octavian's claim for the Aggregate Termination Payment existing prior to the date hereof shall be immediately and automatically reinstated in full in the original amount thereof, together with interest accruing at the rate specified in the Charters from and after June 17, 2013, and the releases, compromises and concessions provided for hereunder shall be immediately and automatically null and void,  if Geden Holdings or any other Geden Party breaches any of its obligations under Clause 2(b), Clause 3(a) or 3(c) hereunder, or any payment or transfer heretofore or hereafter made by any Geden Party to Octavian, or any obligation heretofore or hereafter incurred by any Geden Party under or pursuant to  this Agreement, the Marka Charter or the Enjoy Charter,  is recovered, set aside, avoided, repudiated, rejected or rendered unenforceable in whole or in part, or any transaction between Octavian and any Geden Party is wholly or partially unwound or rendered unenforceable, or a lawsuit or other proceeding is initiated by or on behalf of any Geden Party or the estate, shareholder, trustee, representative, affiliate or creditor of any Geden Party seeking such relief.

(b)     As of the date on which all conditions hereof have been satisfied (the "Effective Time"), in consideration for the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Geden Parties, on behalf of themselves and their heirs, administrators, executors, and assigns (and/or their related or affiliated entities, their parent entities, subsidiaries, partners, general partners, members, managing members, direct and indirect affiliates, and all other related entities and/or funds or investment partnerships, predecessors, successors and assigns, and each and all of their current and former officers, directors, employees, trustees, agents, attorneys, plan administrators, representatives, partners, members, advisors and shareholders), irrevocably

7



release and discharge Octavian, its administrators, executors, and assigns (and/or their related or affiliated entities, their parent entities, subsidiaries, partners, general partners, members, managing members, direct and indirect affiliates, and all other related entities and/or funds or investment partnerships, predecessors, successors and assigns, and each and all of their current and former officers, directors, employees, trustees, agents, attorneys, plan administrators, representatives, partners, members, advisors and shareholders) of, from and with respect to any and all actions, causes of action, claims, judgments, awards, counterclaims, demands, court costs, expenses, attorneys' fees, liabilities, obligations, debts of any kind whatsoever, and all other rights or claims, whether known or unknown, in contract or tort, liquidated or unliquidated, which any Geden Party, on behalf of themselves and their heirs, administrators, executors, and assigns (and/or their related or affiliated entities, their parent entities, subsidiaries, partners, general partners, members, managing members, direct and indirect affiliates, and all other related entities and/or funds or investment partnerships, predecessors, successors and assigns, and each and all of their current and former officers, directors, employees, trustees, agents, attorneys, plan administrators, representatives, partners, members, advisors and shareholders) had, now have, shall have or may have against Octavian relating to, arising out of or concerning any events occurring prior to the Effective Date arising out of the Charters, the Vessels, their operation, the Notes which for the avoidance of doubt shall be null and void as of the date hereof, and any other written agreements by and between Octavian and any Geden Party relating to the Charters or the Vessels and any and all allegations that have been made or could have been made in the Lawsuit.

   6. Covenants.

   (a)     Promptly following the Effective Time, the Parties shall enter in the District Court, by and through their counsel, a Stipulation, (the "Stipulation") a copy of which is attached hereto as Exhibit C and the terms of which are incorporated herein, to be filed and



entered on the District Court's Docket Sheet, discontinuing the Lawsuit without prejudice and without costs to any party, and releasing the MARKA forthwith from arrest and the Parties hereto are to cooperate in obtaining said release.

(b)   The Geden Parties agree to cooperate in good faith with any of Octavian's efforts to sell the Vessels or Octavian's interests therein, by, among other things, providing to prospective buyers reasonable access to the Vessels, providing access to records, documents and other information as appropriate to facilitate, and consenting to the sale of the Vessels. The Geden Parties agree that the terms and conditions set forth in this Agreement shall inure to the benefit of any such buyer following consummation of the transactions described therein.

(c)   The Parties agree as of the Effective Time each of the Vessels shall be free and clear of any lien, mortgage, pledge, assignment, security interest, claim, charge or encumbrance of any kind, or any option, conditional sale, lease or other arrangement having the practical effect of any of the foregoing which have been created by or are the responsibility of the Geden Parties and in the same condition as such Vessels were originally delivered to the Charterers, save for ordinary wear and tear. Attached hereto as Exhibits D and E are lists of the current payables in respect of the MARKA and ENJOY, respectively, which the Geden Parties undertake to pay in full within fourteen (14) calendar days following the Effective Time.

(d)   Except for the terms of the Stipulation referenced in the above Paragraph 4(a) and the statements set forth in Paragraph 5(a) herein, this Agreement shall be kept confidential and shall not be disclosed to any third parties other than (i) in response to a subpoena or other legal process, (ii) as may be necessary with regard to any governmental audit or other inquiry or to such other auditors as may be necessary in the ordinary conduct of business, (iii) by Octavian Marka or Octavian Enjoy to any interested potential buyer of either



Vessel, (iv) to CSS or Panamax International or (v) as may be necessary in order to enforce the terms hereof.

7. Miscellaneous.

(a)     The Parties acknowledge and agree that Octavian's claims are both valid in the full amount claimed and maritime in nature under the Charters.

(b)     Each of the Parties to this Agreement warrants and represents to the other that it has the power to enter into this Agreement and that the person executing this Agreement on its behalf has been authorized to do so by any and all appropriate corporate bodies. Each of the undersigned represents and warrants that he or she has the authority and capacity to act on behalf of the entity for which he/she signed this Agreement and bind it to the terms and conditions of this Agreement. All the terms and conditions of this Agreement shall be binding upon and inure to the benefit of the Parties' respective successors and assigns.

(c)     This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the Parties may execute this Agreement by signing any such counterpart. Photographic or telecopied copies of such signed counterparts may be used in lieu of the originals for any purpose.

(d)     This Agreement may not be modified, amended, changed, or terminated or any of its provisions waived, except in a writing signed by the Parties. No oral understanding or agreement shall be effective to waive, amend, modify, or discharge the terms and/or conditions of this Agreement.

(e)     This Agreement shall be construed and interpreted in accordance with the laws of the State of New York, without regard to its conflicts of law provisions. Any dispute arising out of, relating to or in any way associated with this Agreement and/or the performance of the obligations set forth herein shall be submitted to the United States District Court for the



Southern District of New York, the personal jurisdiction to which the Parties hereby consent. The Geden Parties further agree that service of any pleadings in any action commenced against the Geden Parties hereunder by courier upon the office of Geden Lines (currently located at Buyukdere Cad. Yapi Kredi Plaza A Blok, Kat 12 34330 Levent/ Instanbul/ Turkey ) shall be deemed to be good and effective service upon the Charterers in accordance with the Federal Rules of Civil Procedure and the Charterers shall not assert a defense of lack of jurisdiction or improper service.

     (f)     This Agreement constitutes the full and entire understanding and agreement between the Parties with regard to the subjects hereof.  Neither this Agreement nor any term hereof may be amended, waived, discharged or terminated, except by a written instrument signed by the party to be charged. Time is of the essence with respect to the performance of the Parties' obligations hereunder.

     (g)     This Agreement shall be null and void if the Effective Time has not occurred before 12:00 pm on July 16, 2013(the "Deadline").  In the event that the Effective Time does not occur prior to the Deadline or this Agreement is not signed by all of the Parties by the Deadline, neither this Agreement nor any delay or failure of the Owners to enforce their rights under the Charters or the Charter Guarantees or with respect to any non-compliance with any provision thereof shall constitute a variation, waiver, suspension, or limitation of any rights of any of the Owners or give rise to any estoppel.

IN WITNESS WHEREFORE, the parties hereto have executed this Agreement.

OCTAVIAN MARKA LLC

By:
Name: OMER DINNERSTEIN.
Title: VP

Dated: July 15, 2013

OCTAVIAN MARITIME ENJOY LLC

By:
Name: OMFR DANNERSTEIN.
Title: VP.

Dated: July 15, 2013

MARKA SHIPPING LTD.

By:
Name: Mehmet Mat
Title: CFO

Dated: July 15, 2013

ENJOY SHIPPING LTD.

By:
Name: Mehmet Mat
Title: CFO

Dated: July 15, 2013

GEDEN HOLDINGS LTD.

By:
Name: Mehmet Mat
Title: CFO

Dated: July 15, 2013

12

## GUARANTEE

THIS GUARANTEE, dated July 15, 2013 (this "**Guarantee**"), is made by GEDEN HOLDINGS LTD., a limited liability company incorporated under the laws of the Republic of Malta (the "**Guarantor**"), in favor of OCTAVIAN MARITIME ENJOY LLC (the "**Enjoy Owner**") and OCTAVIAN MARKA LLC (the "**Marka Owner**" and together with the Enjoy Owner, collectively the "**Owners**"), each a limited liability company formed under the laws of the Republic of the Marshall Islands.

**WHEREAS:**

(A)   Pursuant to the terms and conditions of that certain Bareboat Charter dated April 20, 2012 (as amended or supplemented from time to time, the "**Original Enjoy Charter**") between the Owner and ENJOY SHIPPING LTD., a Maltese corporation (the "**Original Enjoy Charterer**"), the Enjoy Owner agreed to charter the Maltese registered vessel "ENJOY", IMO Number 9471329 (the "**Enjoy Ship**"), to the Original Enjoy Charterer;

(B)   Pursuant to the terms and conditions of that certain Bareboat Charter dated May 15, 2012 (as amended or supplemented from time to time, the "**Original Marka Charter**", and together with the Original Enjoy Charter, collectively the "**Original Charters**") between the Owner and MARKA SHIPPING LTD., a Maltese corporation (the "**Original Marka Charterer**", and together with the Original Enjoy Charterer, collectively the "**Original Charterers**"), the Marka Owner agreed to charter the Maltese registered vessel "MARKA", IMO Number 9512484 (the "**Marka Ship**", and together with the Enjoy Ship, collectively the "**Ships**"), to the Original Marka Charterer;

(C)   Pursuant to the terms and conditions of that certain Time Charter dated March 22, 2012 (as amended or supplemented from time to time, the "**Enjoy Sub-Charter**") between the Original Enjoy Charterer and CHARTERING AND SHIPPING SERVICES SA, a Swiss corporation (the "**Enjoy Sub-Charterer**"), the Original Enjoy Charterer has agreed to sub-charter the Enjoy Ship to the Enjoy Sub-Charterer;

(D)   Pursuant to a settlement agreement dated as of July 15, 2013 (the "**Settlement Agreement**"), made by and among the Owners, the Guarantor and the Original Charterers, (1) each of the Original Charters shall be deemed cancelled and (2) either (a) the Enjoy Owner, the Original Enjoy Charterer and the Enjoy Sub-Charterer shall enter into a novation agreement in a form to be agreed pursuant to which the Enjoy Sub-Charter shall be novated such that the Enjoy Sub-Charterer shall be the direct charterer of the Enjoy Ship from the Enjoy Owner or (b) the Original Enjoy Charterer and the Enjoy Owner shall enter into a time charter for the Enjoy Ship in a form to be agreed (the "**New Time Charter**");

(E)   Pursuant to the terms and conditions of that certain Management Agreement to be dated on or about July 15, 2013 (as amended or supplemented from time to time, the "**Enjoy Management Agreement**") between the Enjoy Owner and GENEL DENIZCILIK




EXHIBIT "_A_"

NAKLIYATI A.S., a Turkish corporation (the "**Manager**"), the Manager has agreed to provide management services for the Enjoy Ship;

(F)     Pursuant to the terms and conditions of that certain Management Agreement dated July 15, 2013 (as amended or supplemented from time to time, the "**Marka Management Agreement**", and together with the Enjoy Management Agreement, collectively the "**Management Agreements**"; the Management Agreements together with the Settlement Agreement and the New Time Charter, collectively the "**Relevant Documents**") between the Marka Owner and the Manager, the Manager has agreed to provide management services for the Marka Ship;

(G)     Each of the Original Charterers is the direct subsidiary of the Guarantor and the Guarantor will benefit from the performance by each Original Charterer of its relevant obligations under the Settlement Agreement and the New Time Charter, as the case may be;

(H)     The Manager is an affiliate of the Guarantor and the Guarantor will benefit from the performance by the Manager of its obligations under the Management Agreements; and

(I)     It is a condition precedent to the execution of the Settlement Agreement that the Guarantor shall have executed and delivered this Guarantee to the Owners.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby agrees as follows:

**1      INTERPRETATION**

**1.1     Defined terms.** For purposes of this Guarantee:

"**IFRS**" means the international financial reporting standards adopted by the International Accounting Standards Board from time to time in effect;

"**PATRIOT Act**" means the United States Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Improvement and Reauthorization Act of 2005 (H.R. 3199);

"**Person**" shall mean an individual, partnership, corporation, limited liability company, business trust, bank, trust company, joint venture, association, joint stock company, trust or other unincorporated organization, whether or not a legal entity, or any government or agency or political subdivision thereof;

"**Pertinent Jurisdiction**" means:

2



(a)     the jurisdiction under the laws of which the Guarantor is incorporated;

(b)     a jurisdiction in which the Guarantor's central management and control is or has recently been exercised;

(c)     a jurisdiction in which the overall net income of the Guarantor is subject to corporation tax, income tax or any similar tax;

(d)     a jurisdiction in which assets of the Guarantor (other than securities issued by, or loans to, related companies) having a substantial value are situated, in which the company maintains a permanent place of business, or in which a Security Interest (as defined below) created by the Guarantor must or should be registered in order to ensure its validity or priority;

(e)     a jurisdiction the courts of which have jurisdiction to make a winding up, administration or similar order in relation to the Guarantor or which would have such jurisdiction if their assistance were requested by the courts of a country referred to in paragraphs (b), (c) or (d) above; and

(f)     any political subdivision of any of the foregoing; and

"**Security Interest**" means:

(a)     a mortgage, charge or pledge, any maritime lien, other lien or encumbrance, maritime privilege or any other security interest of any kind;

(b)     the rights of the plaintiff under an action *in rem*; and

(c)     any arrangement entered into by a Person (A) the effect of which is to place another Person (B) in a position which is similar, in economic terms, to the position in which B would have been had he held a security interest over an asset of A; but (c) does not apply to a right of set off or combination of accounts conferred by the standard terms of business of a bank or financial institution.

1.2     **General interpretation.**  In this Guarantee:

(a)     references to, or to a provision of, any law include any amendment, extension, re-enactment or replacement, whether made before the date of this Guarantee or otherwise; and

(b)     words denoting the singular number shall include the plural and vice versa.

3



## 2   CONSENT

2.1   The Guarantor hereby acknowledges that it is fully aware of and consents to the terms and conditions of each Relevant Document.

## 3   GUARANTEE

3.1   **Guarantee and indemnity.** In order to induce the Owners to execute the Settlement Agreement, the Guarantor irrevocably and unconditionally:

(a)   guarantees to each Owner and its successors and assigns, as primary obligor and not merely as a surety, each of the following until final and indefeasible payment and performance under each Relevant Document has been made:

  (i)   the due and punctual payment to the relevant Owner, when due, of all amounts payable at any time by the relevant Original Charterer under the Settlement Agreement and the New Time Charter, as the case may be;

  (ii)   the due and punctual payment to the relevant Owner, when due, of all amounts payable at any time by the Manager under the relevant Management Agreement;

  (iii)   the full and prompt performance of each and every duty, agreement, covenant, undertaking, indemnity and obligation of each Original Charterer under and in accordance with the terms of the Settlement Agreement and the New Time Charter, as the case may be; and

  (iv)   the full and prompt performance of each and every duty, agreement, covenant, undertaking, indemnity and obligation of the Manager under and in accordance with the terms of the relevant Management Agreement;

(b)   undertakes with the Owner that, if for any reason either Original Charterer or the Manager shall fail to pay fully and promptly any amount due and payable under any Relevant Document or if either Original Charterer or the Manager shall fail to perform and discharge any of its duties, agreements, covenants, undertakings or obligations under any Relevant Document, then the Guarantor shall pay such amount, together with interest thereon, if any, as may be due and payable or cause such duty, agreement, covenant, undertaking or obligation to be promptly performed and discharged following written demand for such payment, performance or discharge by the relevant Owner; and

(c)   agrees to indemnify each Owner immediately on demand against any cost, loss or liability suffered or incurred by such Owner if any Guaranteed Obligation (as defined below) is or becomes unenforceable, invalid or illegal.

The amounts payable by, and the duties, agreements, covenants, undertakings and obligations of, the Original Charterers and the Manager guaranteed by Clause 3.1(a),

4



3.1(b) and 3.1(c) hereby are hereinafter referred to collectively as the "**Guaranteed Obligations**" and individually as a "**Guaranteed Obligation**".

3.2     **Nature of obligations.**   This Guarantee shall constitute a guarantee of punctual performance and payment and not of collection, and the Guarantor specifically agrees that it shall not be necessary, and that the Guarantor shall not be entitled to require, before or as a condition of enforcing the liability of the Guarantor under this Guarantee or requiring payment or performance of the Guaranteed Obligations by the Guarantor hereunder, or at any time thereafter, that either Owner:

(a)     file suit or proceed to obtain or assert a claim for personal judgment against either Original Charterer or the Manager or any other Person that may be liable for any Guaranteed Obligation;

(b)     make any other effort to obtain payment or performance of any Guaranteed Obligation from either Original Charterer or the Manager or any other Person that may be liable for such Guaranteed Obligation;

(c)     foreclose against or seek to realize upon any security now or hereafter existing for such Guaranteed Obligation;

(d)     exercise or assert any other right or remedy to which such Person is or may be entitled in connection with any Guaranteed Obligation or any security or other guarantee now or hereafter existing therefor; or

(e)     assert or file any claim against the assets of either Original Charterer or the Manager or any other Person liable for any Guaranteed Obligation.

4       **GUARANTEE ABSOLUTE**

4.1     **Obligations not affected.**   This is a continuing Guarantee and is irrevocable, absolute and unconditional, primary and original, immediate and not contingent, and shall remain in full force and effect without regard to and shall not be released, discharged or in any way affected by any circumstance or condition including, without limitation:

(a)     any invalidity, irregularity, illegality or unenforceability of any Relevant Document, any Guaranteed Obligation or any Collateral (as such term is defined in Clause 4.5(a) below) or any future amendment, supplement or modification of this Guarantee;

(b)     any amendment, modification, extension or termination of, or any supplement to, any Relevant Document or any Guaranteed Obligation, or any assignment or transfer of any part thereof;

5



(c)   any exercise or non-exercise by either Owner of any right, remedy, power or privilege under or in respect of any Relevant Document, any Guaranteed Obligation, any Collateral or this Guarantee;

(d)   the failure, omission, delay or lack on the part of either Owner to assert any claim or demand against the Guarantor, the Original Charterers or the Manager;

(e)   any reduction, limitation, impairment or termination of the Guaranteed Obligations for any reason, including any claim of waiver, release, surrender, alteration or compromise;

(f)   any law, regulation or order of any jurisdiction affecting any term of the Guaranteed Obligations or either Owner's rights with respect thereto;

(g)   any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or similar proceedings in respect of the Original Charterers, the Manager or the Guarantor;

(h)   any counterclaim, setoff, deduction, abatement or defense based upon any claim the Guarantor may have against either Owner; or

(i)   any other matter whatsoever which might otherwise have the effect of releasing the Guarantor from its obligations under this Guarantee,

all whether or not the Guarantor, the Manager or the Original Charterers shall have notice or knowledge of any of the foregoing.

**4.2     Reinstatement.**  The Guarantor agrees that this Guarantee shall continue to be effective, or be automatically reinstated, as the case may be, if and to the extent that for any reason at any time payment, in whole or in part by or on behalf of the Original Charterers, the Manager or the Guarantor of any of the Guaranteed Obligations is rescinded or must otherwise be restored or returned by either Owner upon the bankruptcy, insolvency, reorganization, arrangements, adjustment, composition, dissolution, liquidation, or the like, of either Original Charterer, the Manager or the Guarantor, or as a result of the appointment of a custodian, receiver, trustee or other officer with similar powers with respect to either Original Charterer, the Manager or the Guarantor or any substantial part of either Person's respective property, or otherwise, all as though such payment had not been made notwithstanding any termination of this Guarantee or any Relevant Document.

**4.3     Full recourse.**  The unconditional obligations of the Guarantor set forth in this Guarantee constitute the full recourse obligations of the Guarantor and are enforceable against the Guarantor to the full extent of its assets and property.

**4.4     Joint and several.** . This Guarantee shall be joint and several with any other guarantee given to the Owners in respect of the Guaranteed Obligations.

6



**4.5**    **Collateral.** Each Owner may, at any time and from time to time, without the consent of or notice to the Guarantor, and without in any manner waiving or impairing or releasing the obligations of the Guarantor hereunder:

(a)    realize upon in any manner and in any order any collateral (the "**Collateral**") by whomsoever at any time pledged, mortgaged or assigned to secure or howsoever securing any of the Guaranteed Obligations;

(b)    apply any sums by whomsoever paid or howsoever realized to the payment of any of the Guaranteed Obligations;

(c)    extend the time of payment, or otherwise modify or amend the terms and provisions of, any of the Guaranteed Obligations; and

(d)    exchange, compromise, discharge, release, surrender, substitute or modify any of the Collateral.

**5      PAYMENTS BY THE GUARANTOR**

**5.1**    **Payment currency.**    All payments made hereunder by the Guarantor shall be in immediately available United States Dollars made to the relevant Owner's account indicated at Clause 5.2 hereof, and shall be made free and clear of, without deduction or withholding for or on account of, any Taxes (as such term is defined in Clause 5.3(c) hereof), unless such deduction or withholding is required by law, in which case the provisions of Clause 5.3 shall apply.

**5.2**    **Owner's account.** All amounts payable to either Owner hereunder shall be made free of bank charges in immediately available United States Dollar funds by wire transfer to such account as such Owner shall advise the Guarantor from time to time in writing.

**5.3**    **Taxes.**

(a)    If the Guarantor shall be required by law to make any such deduction or withholding in connection with a payment made or to be made pursuant to this Guarantee, then the Guarantor shall make such deduction or withholding and pay such additional amounts as may be necessary in order that the net amount received by either Owner, after reduction by such deduction or withholding (including any such taxes as a result of additional taxes payable with respect to the receipt of accrual of amounts payable pursuant to this Clause 5.3), shall be equal to the full amount that such Owner would have received, after deduction or withholding of taxes, had either Original Charterer or the Manager discharged its obligations (including tax gross-up obligations).

(b)    Subject at all times to Clause 5.3(a), the parties hereto agree to use their best efforts to:

7



    (i)    enter into such amendment to this Guarantee as will lawfully allow the Guarantor to reduce or eliminate any deduction or withholding for taxes or/and;

    (ii)    confer and cooperate to obtain and file any form, certificate or other document with any tax authority in order to reduce or eliminate any deduction or withholding for Taxes.

(c)    For the purposes of this Clause 5.3, the term "Taxes" shall mean all present and future income, net income, franchise, excise, gross income, gains, gross receipts, alternative or add-on minimum taxes and other taxes (including, without limitation, sales or transfer taxes, use taxes, value added taxes, ad valorem taxes, property taxes (personal and real, tangible and intangible) withholding taxes and stamp taxes) and all levies, imposts, assessments, fees (including but not limited to license, documentation, recording and registration fees), deductions, duties, tariffs, charges and payroll or other withholdings, in each case of whatsoever kind, nature or description, imposed on the Guarantor or either Owner or which the Guarantor or either Owner may be subject by the federal, state or local government or other taxing authority of any jurisdiction or any international authority, arising out of, resulting from, or related to the acquisition, ownership, operation, delivery or redelivery or financing or chartering of the Ship, or any other transaction contemplated by the Relevant Documents or this Guarantee, but excepting:

    (i)    taxes on or measured by the net income of either Owner imposed by its jurisdiction of formation, or

    (ii)    taxes imposed as a result of business transactions of either Owner unrelated to the transactions contemplated by the Relevant Documents or this Guarantee.

## 6    GUARANTOR'S WAIVERS

**6.1**    **General waivers.** The Guarantor hereby unconditionally waives:

(a)    any right to revoke this Guarantee;

(b)    any rights to interpose any defense, counterclaim or offset of any nature and description which it may have or which may exist among the Owners, the Original Charterers, the Manager and the Guarantor;

(c)    notice of acceptance of this Guarantee and of any action by either Owner in reliance thereon;

(d)    presentment, demand or payment, notice of dishonor or nonpayment, protest and notice of protest with respect to any of the Guaranteed Obligations;

8



(e)    all notices which may be required by statute, rule or law or otherwise to preserve any rights against the Guarantor under this Guarantee;

(f)    giving any notice of default or other notice to, or making any demand on, any party liable in any manner for the payment of any of the Guaranteed Obligations;

(g)    any requirement for the enforcement, assertion or exercise of any right, remedy, power or privilege under or in respect to the Relevant Documents;

(h)    any requirement that either Original Charterer or the Manager be joined as a party to any proceedings for the enforcement of this Guarantee or any provision hereof; and

(i)    any requirement of due diligence or to mitigate damages resulting from a default by either Original Charterer under the Settlement Agreement or the New Time Charter, as the case may be, or the Manager under either Management Agreement.

**6.2**    **Subrogation.**  The Guarantor hereby waives any right to be subrogated to the rights of the Owners with respect to the Guaranteed Obligations.  This waiver is given by the Guarantor to the extent that the Owners may require the enforcement thereof in order to avoid any extension of any claimed preference period in any bankruptcy or insolvency proceeding.  In no event, however, shall the Guarantor have any right of subrogation so long as the Guaranteed Obligations shall remain outstanding, and the Guarantor agrees that it will not institute or take any action against the Original Charterers or the Manager seeking reimbursement or indemnification by the Original Charterers or the Manager with respect to any payments made by the Guarantor to the Owners under this Guarantee so long as the Guaranteed Obligations remain outstanding.

**6.3**    **Contribution.**  The Guarantor shall not have any right of recourse, reimbursements, contribution, indemnification, or simple right (by contract or otherwise) against the Original Charterers, the Manager or any other guarantor in respect of the Guaranteed Obligations.

**7**    **SUBORDINATION**

**7.1**    **Subordination.**  Any claims of the Guarantor against the Original Charterers or the Manager shall be in all respects subject and subordinate to the full and complete payment of all Guaranteed Obligations.

**8**    **GUARANTOR'S REPRESENTATIONS AND WARRANTIES**

**8.1**    **General.**  The Guarantor represents and warrants as follows.

**8.2**    **Status.**  The Guarantor is:

9



(a)  duly incorporated and validly existing and in good standing under the law of its jurisdiction of formation; and

(b)  duly qualified and in good standing as a foreign company in each other jurisdiction in which it owns or leases property or in which the conduct of its business requires it to so qualify or be licensed except where, in each case, the failure to so qualify or be licensed and be in good standing could not reasonably be expected to have a material adverse effect on its business, assets or financial condition or which may affect the legality, validity, binding effect or enforceability of this Guarantee,

and there are no proceedings or actions pending or contemplated by the Guarantor, or to the knowledge of the Guarantor contemplated by any third party, to dissolve, wind-up or terminate the Guarantor.

**8.3**  **Company power; consents.**  The Guarantor has the capacity and has taken all action, and no consent of any Person is required, for it to:

(a)  own or lease and operate its properties and to carry on its business as now conducted and as proposed to be conducted;

(b)  execute this Guarantee;

(c)  comply with its obligations under this Guarantee;

except, in each case, for consents which have been duly obtained, taken, given or made and are in full force and effect.

**8.4**  **Consents not liable to revocation.**  Nothing has occurred which makes any of the consents referred to in Clause 8.3 liable to revocation and the Guarantor is in compliance with all applicable laws.

**8.5**  **Legal validity.**  Subject to any relevant insolvency laws affecting creditors' rights generally, this Guarantee constitutes the Guarantor's legal, valid and binding obligations enforceable against it in accordance with its terms.

**8.6**  **No conflicts; no liens.**  The execution by the Guarantor of this Guarantee, and the compliance by the Guarantor with its obligations hereunder, will not involve or lead to a contravention of:

(a)  any law or regulation or order, writ, judgment, injunction, decree, determination or award applicable to the Guarantor;

(b)  the constitutional documents of the Guarantor; or

10



(c)    any contractual or other obligation or restriction which is binding on the Guarantor or any of its assets.

**8.7    Taxes.**

(a)    The Guarantor has filed or has caused to be filed all tax returns and other reports that it is required by law or regulation to file in any Pertinent Jurisdiction, and has paid or caused to be paid all taxes, assessments and other similar charges that are due and payable in any Pertinent Jurisdiction, other than taxes and charges:

   (i)    which are (x) not yet delinquent or (y) being contested in good faith by appropriate proceedings and for which adequate reserves have been established; or

   (ii)   the non-payment of which could not reasonably be expected to have a material adverse effect on the Guarantor.

(b)    The charges, accruals, and reserves on the books of the Guarantor respecting taxes are adequate in accordance with IFRS.

**8.8    No default.**  Except as disclosed to the Owners in writing, no default, or event of default or circumstance which, with the giving of any notice, the lapse of time, and/or the satisfaction of any other condition, would constitute an event of default, has occurred or is continuing under any agreement to which the Guarantor is a party.

**8.9    Information.**  All financial and other information which has been provided in writing by or on behalf of the Guarantor in connection with this Guarantee was true and accurate at the time it was given, there are no other facts or matters the omission of which would have made or make any such information false or misleading and there has been no material adverse change in the financial condition, operations or business prospects of the Guarantor since the date on which such information was provided.

**8.10   No litigation.**  No legal or administrative action involving the Guarantor (including any action relating to any alleged or actual breach of or any Environmental Law (as such term is defined below)) has been commenced or taken to the Guarantor's knowledge by any Person, or, to the Guarantor's knowledge, is likely to be commenced or taken which, in either case, would be likely to have a material adverse effect on the business, assets or financial condition of the Guarantor or which may affect the legality, validity, binding effect or enforceability of this Guarantee.

**8.11   Compliance with law.**

(a)    the operations and properties of the Guarantor comply with all applicable laws and regulations (such laws and regulations, individually or collectively, "**Environmental Law**"), including without limitation, any applicable law relating to pollution or the protection of the environment, to the carriage of oil, oil products and any other substance

11



including any chemical, gas or other hazardous or noxious substance) which is (or is capable of being or becoming) polluting, toxic or hazardous (each such substance, an **"Environmentally Sensitive Material"**) or to actual or threatened releases of Environmentally Sensitive Material, and all necessary permits, approvals, identification numbers, license or other authorization required under any Environmental Law (collectively, **"Environmental Permits"**) have been have been obtained and are in effect for the operations and properties of the Guarantor and the Guarantor is in compliance in all material respects with all such Environmental Permits;

(b)    the Guarantor has not been notified in writing by any Person that it or any of its subsidiaries (including the Original Charterers) or affiliates is potentially liable for the remedial or other costs with respect to treatment, storage, disposal, release, arrangement for disposal or transportation of any Environmentally Sensitive Material, except for costs incurred in the ordinary course of business with respect to treatment, storage, disposal or transportation of such Environmentally Sensitive Material; and

(c)    Neither the Guarantor nor any of it subsidiaries or affiliates is subject to any unsatisfied claims arising under the laws of any nation (including any political subdivision thereof) or under any international law, treaty or convention, for pollution or removal or clean-up of any pollution form the natural environment, or for damage to or destruction of natural resources and personal property resulting from pollution.

except to the extent that any of the foregoing could not reasonably be expected to (i) have a material adverse effect on the business, assets or financial condition of the Guarantor, or (ii) affect the legality, validity, binding effect or enforceability of this Guarantee.

8.12    **Solvency.** The execution, delivery and performance by the Guarantor of this Guarantee will not render the Guarantor insolvent, nor is it being made in the contemplation of the Guarantor's insolvency.

8.13    **Ownership of Original Charterers.** The Guarantor is the sole owner of all of the equity interests of each Original Charterer.

8.14    **Ownership of Manager.** The Guarantor is the sole owner of all of the equity interests of the Manager.

## 9    GUARANTOR'S COVENANTS

9.1    **General.** The Guarantor covenants as follows.

9.2    **Books of record and account.** The Guarantor shall keep proper books of record and account, in which full and materially correct entries shall be made of all financial transactions and the assets and business of the Guarantor in accordance with IFRS.

SK 27089 0006 1395025 v3



**9.3**   **Financial reports.**  The Guarantor will furnish to each Owner the financial statements, reports and other documents to be provided by the Guarantor in accordance with the Relevant Documents.

**9.4**   **"Know your customer" checks.**  If a proposed financing of a Ship obliges the relevant Owner to comply with "know your customer" or similar identification procedures in circumstances where the necessary information is not already available to it, the Guarantor shall promptly upon the request of such Owner supply, or procure the supply of, such documentation and other evidence as is reasonably requested by such Owner (for itself or on behalf of any prospective lender) in order for such Owner or any prospective lender to carry out and be satisfied it has complied with all necessary "know your customer" or other similar checks under all applicable laws and regulations.

**9.5**   **Ownership of Original Charterers.**  The Guarantor shall at all times be the sole owner of all of the equity interests of the Original Charterers.

**9.6**   **Ownership of Manager.**  The Guarantor shall at all times be the sole owner of all of the equity interests of the Manager.

**10**   **MISCELLANEOUS**

**10.1**   **Expenses.**  The Guarantor shall pay, or reimburse the Owners for, all reasonable costs and expenses, including, without limitation, reasonable attorney's fees and disbursements, incurred by the Owners in connection with the enforcement of any rights under this Guarantee.

**10.2**   **Survival.**  All agreements, covenants, representations and warranties made herein by the Guarantor shall survive execution and delivery of this Guarantee.

**10.3**   **Successors and assigns.**

(a)   This Guarantee shall be valid and binding upon the Guarantor, its successors and assigns, irrespective of and unaffected by, any merger or consolidation of the Guarantor or the Original Charterers or the Manager into or with any other Person, or any sale, lease or transfer of any or all of the assets of the Guarantor or the Original Charterers or the Manager to any other Person, each of whom is intended to be bound hereby.  This Guarantee shall inure to the benefit of the Owners and their respective successors and assigns.

(b)   Each Owner may transfer or assign its rights hereunder to any entity without the prior consent of the Guarantor or the other Owner.  The Guarantor may not transfer or assign its rights hereunder to any entity without the prior written consent of each Owner.

**10.4**   **Rights cumulative.**  Each and every right, remedy and power granted to the Owners under this Guarantee or allowed to it by law or other agreement shall be cumulative and not

13



exclusive of any other, and may be exercised by either Owner at any time and from time to time. In addition, to the extent permitted by applicable law, the Guarantor waives, and agrees that it shall not at any time insist upon, plead or in any manner whatsoever claim or take the benefit or advantage of, any marshaling of assets or similar laws, whether now or at any time hereafter in force, which may delay, prevent or otherwise affect, the performance by the Guarantor of its obligations under, or the enforcement by either Owner of, this Guarantee.

10.5  **Further assurances.** The Guarantor agrees, upon the written request of either Owner, and at the Guarantor's sole cost and expense, to execute and deliver to such Owner, from time to time, any additional instruments or documents reasonably considered necessary by such Owner to cause this Guarantee to be, become or remain valid and effective in accordance with its terms.

10.6  **Amendments.** No amendment or waiver of any provision of this Guarantee nor consent by the Owners to any departure by the Guarantor herefrom, shall be effective unless the same shall be in writing and signed by both Owners and such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

10.7  **Severability.** Should any provision of this Guarantee for any reason be declared invalid or unenforceable, such decision shall not affect the validity or enforceability of any of the other provisions of this Guarantee, which remaining provisions shall remain in full force and effect and the application of such invalid or unenforceable provision to Persons or circumstances other than those as to which it is held invalid or unenforceable shall be valid and be enforced to the fullest extent permitted by law.

10.8  **Guarantor's interest.** The Guarantor hereby acknowledges that it has derived or expects to derive a financial or other benefit from the Guaranteed Obligations incurred by the Original Charterers and the Manager.

10.9  **Notices.** All notices, requests, demands, waivers and other communications required or permitted to be given under this Guarantee shall be dated and in writing, mailed by registered or certified mail, postage prepaid, or by cable, telex or facsimile confirmed in writing, or by mailed by registered or certified mail, postage prepaid, or by electronic mail ("Email").

If such notice is to the Guarantor, it shall be addressed to:

> Geden Holdings Ltd.
> c/o Genel Denizcilik Nakliyati AS
> Buyukdere Cad. Yapi Kredi Plaza A Blok
> Kat 12 34330 Levent/ Istanbul/ Turkey
>
> Attention: Mehmet Mat

14

Facsimile:  90 212 325 58 14
Email:  finance@gedenlines.com
Telephone:  90 212 319 51 00

If such notice is to either Owner, it shall be addressed to:

Octavian Maritime Enjoy LLC / Octavian Marka LLC
c/o Octavian Maritime Holdings, Inc. (as Agent)
745 Fifth Avenue
New York, New York 10151

Attention:  Omer Donnerstein
Facsimile:  212-224-9600
Email:  finance@octavianmaritime.com
Telephone:  212-224-9571

or to such other Person or address as any party shall specify by notice in writing to the other party.  All such notices, requests, demands, waivers and communications shall be effective only upon receipt thereof.

**10.10  Limitation of liability.**  Each of the Guarantor and the Owners hereby confirms that it is its intention that the Guaranteed Obligations not constitute a fraudulent transfer or conveyance for purposes of the United States Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar law.  To effectuate the foregoing intention, each of the Guarantor and the Owners hereby irrevocably agrees that the Guaranteed Obligations shall be limited to such amount as will, after giving effect to such maximum amount and all other (contingent or otherwise) liabilities of the Guarantor that are relevant under such laws, result in the Guaranteed Obligations of the Guarantor in respect of such maximum amount not constituting a fraudulent transfer or conveyance.

**10.11  Reliance of Owner.**  Each Owner has entered into the Settlement Agreement in reliance upon, among other things, this Guarantee.

## 11    LAW AND JURISDICTION

**11.1    Governing law.**  THIS GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO ITS CONFLICT OF LAW PRINCIPLES.

**11.2    Consent to jurisdiction.**

(a)    The Guarantor hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or Federal court of the

15



United States of America sitting in New York County, and any appellate court thereof, in any action or proceeding arising out of or relating to this Guarantee to which the Guarantor is a party or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State Court or, to the extent permitted by law, in such Federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b)     The Guarantor hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Guarantee in any New York State or Federal court and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court and any immunity from jurisdiction of any court or from any legal process with respect to itself or its property.

(c)     The Guarantor also irrevocably consents to the service of any and all process in any such action or proceeding by the mailing of copies of such process to its address specified in Clause 10.9. The Guarantor also agrees that service of process may be made on it by any other method of service provided for under the applicable laws in effect in the State of New York.

**11.3    Rights unaffected.**  Nothing in this Clause 11 shall exclude or limit any right either Owner may have (whether under the law of any country, an international convention or otherwise) with regard to the bringing of proceedings, the service of process, the recognition or enforcement of a judgment or any similar or related matter in any jurisdiction.

**11.4    Meaning of "proceedings".**  In this Clause 11, **"proceedings"** means proceedings of any kind, including an application for a provisional or protective measure.

**11.5    WAIVER OF JURY TRIAL.**  THE GUARANTOR IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTEE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**11.6    PATRIOT Act Notice.**  Each Owner hereby notifies the Guarantor that pursuant to the requirements of the PATRIOT Act, the Owners may be required by its lenders to obtain and provide and its lenders may be required to verify and record certain information and documentation that identifies Guarantor, which information may include the name and

16



address of the Guarantor and such other information that will allow either Owner's lenders to identify Guarantor in accordance with the PATRIOT Act.

[EXECUTION PAGE FOLLOWS ON NEXT PAGE]



17

WHEREFORE, the Guarantor has caused this Guarantee to be duly executed and delivered as of the date first above written.

GEDEN HOLDINGS LTD.

By: _____

Name: Mehmet Mat
Title: CFO

AGREED AND ACCEPTED
THIS _15_ DAY OF _July_, 2013

OCTAVIAN MARITIME ENJOY LLC
By: Octavian Maritime Holdings, Inc.,
as sole manager

By: _____
Name: Omer Donnerstein
Title: VP

OCTAVIAN MARKA LLC
By: Octavian Maritime Holdings, Inc.,
as sole manager

By: _____
Name: Omer Donnerstein
Title: VP

SK 27089 0006 1395025 v3

ASSIGNMENT OF EARNINGS

in favor of

OCTAVIAN MARITIME ENJOY LLC,

July _____, 2013

m.t. ENJOY

SK 27089 0005 1395053 v2

EXHIBIT "  "

## ASSIGNMENT OF EARNINGS

### M.T.ENJOY

THIS ASSIGNMENT OF EARNINGS ("this Assignment") is made the ___ day of July, 2013, by ENJOY SHIPPING LTD., a Maltese limited liability company (the "Assignor"), in favor of OCTAVIAN MARITIME ENJOY LLC, a Marshall Islands limited liability company (the "Assignee"), as security for the due performance by the Assignor of its obligations to the Assignee under or in connection with the Time Charter (as such term is hereinafter defined).

### W I T N E S S E T H   T H A T:

WHEREAS:

(A)    The Assignee is the sole owner of the whole of the Maltese flag vessel m.t. ENJOY (the "Vessel");

(B)    Pursuant to a bareboat charter agreement dated March 31, 2011 (as the same may be amended, restated or modified from time to time, the "Bareboat Charter") between the Assignee, as owner, and the Assignor, as bareboat charterer, the Assignee has agreed to bareboat charter the Vessel to the Assignor;

Formatted: Bullets and Numbering

(B)(C) Pursuant to a time charter agreement dated March 22, 2012 (as the same may be amended, restated or modified from time to time, the "Sub-Charter") between the Assignor, as owner, and CSSA, CHARTERING AND SHIPPING SERVICES SA ("CSSA"), as charterer, the Assignor has agreed to time charter the Vessel to CSSA;

(C)(D) It is a condition to the Assignee entering into the Settlement Agreement that the Assignor and the Assignee enter into a time charter (the "Time Charter", and together with the Bareboat Charter, collectively the "Charters") of the Vessel in lieu of the previously existing bareboat charter between the Assignor and AssigneeBareboat Charter that the Assignor execute and deliver to the Assignee, as security for the obligations of the Assignor to the Assignee under or in connection with the Time Charters, an assignment of all of the Assignor's right, title and interest in and to the earnings and requisition compensation of the Vessel derived from the Sub-Charter.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Assignor:

1.    Defined Terms. Unless otherwise defined herein, terms defined in the Time Charter shall have the same meanings when used herein, including in the preamble and recitals of this Assignment.

SK 27089 0005 1395053 v2

2.     <u>Grant of Security</u>.  As security for the payments and performance by the Assignor for the indebtedness, liabilities and obligations of the Assignor from time to time under the Time Charter, the Assignor, as legal and beneficial owner, does hereby assign, transfer and set over unto the Assignee, for the benefit of the Assignee and its successors and assigns, and does hereby grant the Assignee a security interest in, all of the Assignor's right, title and interest in and to (i) all moneys and claims for moneys due and to become due thereto, whether as charter hire, freights, loans, indemnities, payments or otherwise, under, and all claims for damages arising out of any breach of, any bareboat, time or voyage charter, contract of affreightment or other contract for the use or employment of the Vessel, (ii) all remuneration for salvage and towage services, demurrage and detention moneys and any other earnings whatsoever due or to become due to the Assignor arising from the use or employment of the Vessel, (iii) all moneys or other compensation payable by reason of requisition for title or for hire or other compulsory acquisition of the Vessel, and (iv) all proceeds of all of the foregoing.

3.     <u>Notice of Assignment</u>.  The Assignor will promptly (a) give notice, in the form annexed hereto as Exhibit 1 of this Assignment to any charterer or contractee of the Vessel, and (b) cause any charterer or contractee of the Vessel to execute a Consent and Agreement, in the form annexed hereto Exhibit 2 to this Assignment and deliver such Consent and Agreement to the Assignee.

4.     <u>Payment</u>.  The Assignor shall cause all sums payable to the Assignor and assigned hereby, whether as charterhire, freight, indemnities or otherwise, to be paid directly to the Assignee to such account <u>listed in Exhibit 3 to this Assignment</u>~~as the Assignee shall direct for the account of the Assignor~~.  The Assignor does hereby pledge, assign and grant to the Assignee a security interest in all right, title and interest of the Assignor in and to the above referenced account.

5.     <u>Performance under Charters; No Duty of Inquiry</u>.  The Assignor hereby undertakes that, notwithstanding the assignment herein contained, it shall punctually perform all its obligations under all charters and contracts pertaining to the Vessel to which it is a party.  It is hereby expressly agreed that, anything contained herein to the contrary notwithstanding, the Assignor shall remain liable under all charters and contracts pertaining to the Vessel to which it is a party to perform the obligations assumed by it thereunder, and the Assignee shall have no obligation or liability under any such charter or contract by reason of or arising out of the assignment contained herein, nor shall the Assignee be required to assume or be obligated in any manner to perform or fulfill any obligation of the Assignor under or pursuant to any such charter or contract or to make any payment or make any inquiry as to the nature or sufficiency of any payment received by the Assignee, or, unless and until indemnified to its satisfaction, to present or file any claim or to take any other action to collect or enforce the payment of any amounts which may have been assigned to it or to which it may be entitled hereunder or pursuant hereto at any time or times.

6.     <u>Requisition</u>.  The Assignor shall promptly notify the Assignee in writing of the commencement and termination of any period during which the Vessel may be requisitioned.

2

7.    Employment of Vessel.  The Assignor hereby further covenants and undertakes promptly to furnish the Assignee with all such information as it may from time to time require regarding the employment, position and engagements of the Vessel, however not to unreasonably interfere with the conduct of the Assignor's business.

8.    Negative Pledge.  The Assignor does hereby warrant and represent that it has not assigned or pledged, and hereby covenants that it will not assign or pledge so long as this Assignment shall remain in effect, any of its right, title or interest in the whole or any part of the moneys and claims hereby assigned to anyone other than the Assignee, and it will not take or omit to take any action, the taking or omission of which might result in a material alteration or impairment of the rights hereby assigned or any of the rights created in this Assignment; and the Assignor does hereby irrevocably appoint and constitute the Assignee as the Assignor's true and lawful attorney-in-fact with full power (in the name of the Assignor or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all moneys and claims for moneys assigned hereby, to endorse any checks or other instruments or orders in connection therewith, to file any claims or take any action or institute any proceedings which the Assignee may deem to be necessary or advisable in the premises and to file any and all Uniform Commercial Code financing statements or renewals thereof in connection with this Assignment which the Assignee may deem to be necessary or advisable in order to perfect or maintain the security interest granted hereby.

9.    Power of Attorney.  The Assignor does hereby irrevocably appoint and constitute the Assignee as the Assignor's true and lawful attorney-in-fact with full power (in the name of the Assignor or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all moneys and claims for moneys assigned hereby, to endorse any checks or other instruments or orders in connection therewith, to file any claims or take any action or institute any proceedings which the Assignee may deem to be necessary or advisable and otherwise to do any and all things which the Assignor itself could do in relation to the property hereby assigned.

10.    UCC Filings.  The Assignor does hereby authorize the Assignee to do all things the Assignee may deem to be necessary or advisable in order to perfect or maintain the security interest granted by this Assignment including, but not limited to, filing any and all Uniform Commercial Code financing statements or renewals thereof.

11.    Continuing Security.  The security created by this Assignment (i) shall be held by the Assignee as a continuing security for the payment of all moneys which may at any time and from time to time be or become payable by the Assignor under the Time Charter, (ii) shall not be satisfied by an intermediate payment or satisfaction of any part of the amount hereby secured and (iii) shall be in addition to and shall not in any way be prejudiced or affected by any collateral or other security now or hereafter held by the Assignee for all or any part of the moneys hereby secured.

12.    Further Assurances.  The Assignor agrees that at any time and from time to time, upon the written request of the Assignee, the Assignor will promptly and duly execute and deliver any and all such further instruments and documents as the Assignee may deem

desirable in obtaining the full benefits of this Assignment and of the rights and powers herein granted.

13.    <u>Remedies Cumulative and Not Exclusive; No Waiver</u>.  Each and every right, power and remedy herein given to the Assignee shall be cumulative and shall be in addition to every other right, power and remedy of the Assignee now or hereafter existing at law, in equity or by statute, and each and every right, power and remedy, whether herein given or otherwise existing, may be exercised from time to time, in whole or in part, and as often and in such order as may be deemed expedient by the Assignee, and the exercise or the beginning of the exercise of any right, power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy.  No delay or omission by the Assignee in the exercise of any right or power or in the pursuance of any remedy accruing upon any breach or default by the Assignor shall impair any such right, power or remedy or be construed to be a waiver of any such right, power or remedy or to be an acquiescence therein; nor shall the acceptance by the Assignee of any security or of any payment of or on account of any of the amounts due from the Assignor to the Assignee and maturing after any breach or default or of any payment on account of any past breach or default be construed to be a waiver of any right to take advantage of any future breach or default or of any past breach or default not completely cured thereby. In addition to the rights and remedies granted to it in this Assignment, the Assignee shall have rights and remedies of a secured party under the UCC.

14.    <u>Successors and Assigns</u>. This Assignment and all obligations of the Assignor hereunder shall be binding upon the successors and assigns of the Assignor and shall, together with the rights and remedies of the Assignee hereunder, inure to the benefit of the Assignee, its respective successors and assigns.

15.    <u>Waiver; Amendment</u>.  None of the terms and conditions of this Assignment may be changed, waived, modified or varied in any manner whatsoever unless in writing duly signed by the Assignor and the Assignee.

16.    <u>Invalidity</u>.  If any provision of this Assignment shall at any time for any reason be declared invalid, void, unenforceable or otherwise inoperative by a court of competent jurisdiction, then, to the fullest extent permitted by law, (i) the other provisions hereof shall remain in full force and effect in such jurisdiction and shall be liberally construed in favor of the Assignee in order to carry out the intentions of the parties hereto as nearly as may be possible; and (ii) the invalidity and unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.  In the event that it should transpire that by reason of any law or regulation, or by reason of a ruling of any court, or by any other reason whatsoever, the assignment herein contained is either wholly or partly defective, the Assignor hereby undertakes to furnish the Assignee with an alternative assignment or alternative security and/or to do all such other acts as, in the sole opinion of the Assignee, shall be required in order to ensure and give effect to the full intent of this Assignment.

17.    <u>Termination</u>.  If the Assignor shall pay and discharge all of its obligations under or in connection with the Time Charter or is released therefrom in accordance with the terms thereof, all of the right, title and interest herein assigned shall revert to the Assignor and this Assignment shall terminate.

18.   <u>Electronic Delivery</u>. Delivery of an executed copy of this Assignment by facsimile or electronic transmission shall be deemed as effective as delivery of an originally executed copy.  In the event that the Assignor delivers an executed copy of this Assignment by facsimile or electronic transmission, the Assignor shall also deliver an originally executed copy as soon as practicable, but the failure of the Assignor to deliver an originally executed copy of this Assignment shall not affect the validity or effectiveness of this Assignment.

19.   <u>References</u>.  References herein to Sections, Exhibits and Schedules are to be construed as references to sections of, exhibits to, and schedules to, this Assignment, unless the context otherwise requires.

20.   <u>**WAIVER OF JURY TRIAL**</u>**.  EACH OF THE ASSIGNOR, AND BY ITS ACCEPTANCE HEREOF, THE ASSIGNEE, HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY PARTY HERETO OR ANY BENEFICIARY HEREOF ON ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS ASSIGNMENT.**

21.   <u>Notices</u>.  Notices and other communications hereunder shall be in writing and may be sent in accordance with the Time Charter.

22.   <u>Governing Law</u>.  This Assignment shall be governed by and construed in accordance with the laws of the State of New York.

23.   <u>Submission to Jurisdiction</u>.  The Assignor hereby irrevocably submits to the jurisdiction of the courts of the State of New York and of the United States District Court for the Southern District of New York in any action or proceeding brought against it by the Assignee under this Assignment or under any document delivered hereunder and hereby irrevocably agrees that valid service of summons or other legal process on it may be effected by serving a copy of the summons and other legal process in any such action or proceeding on the Assignor by mailing or delivering the same by hand to the Assignor at the address indicated for notices in the Time Charter.  The service, as herein provided, of such summons or other legal process in any such action or proceeding shall be deemed personal service and accepted by the Assignor as such, and shall be legal and binding upon the Assignor for all the purposes of any such action or proceeding.  Final judgment (a certified or exemplified copy of which shall be conclusive evidence of the fact and of the amount of any indebtedness of the Assignor to the Assignee) against the Assignor in any such legal action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment.  The Assignor will advise the Assignee promptly of any change of address for the purpose of service of process.  Notwithstanding anything herein to the contrary, the Assignee may bring any legal action or proceeding in any other appropriate jurisdiction.

24.   <u>Counterparts</u>.   This Assignment may be signed in any number of counterparts, each of which shall be an original with the same effect as if the signatures thereto and hereto were upon the same instrument.

25.   <u>Headings</u>.   In this Assignment, Section headings are inserted for convenience of reference only and shall be ignored in the interpretation hereof.

IN WITNESS WHEREOF, the Assignor has caused this Assignment to be executed on the day and year first above written.

ENJOY SHIPPING LTD.

By _____
Name:
Title:

**EXHIBIT 1**

### EARNINGS ASSIGNMENT NOTICE

TO: CSSA, CHARTERING AND SHIPPING SERVICES SA

TAKE NOTICE:

(a)    that by an Assignment of Earnings dated the ___ day of July, 2013 made by us to OCTAVIAN MARITIME ENJOY LLC (the "Assignee"), we, the charterer of the Maltese flag vessel ENJOY (the "Vessel"), have assigned to the Assignee as from the date hereof a security interest in all our right, title and interest in and to:

(i)    all moneys and claims for moneys due and to become due thereto, whether as charter hire, freights, loans, indemnities, payments or otherwise, under, and all claims for damages arising out of any breach of, any bareboat, time or voyage charter, contract of affreightment or other contract for the use or employment of the Vessel;

(ii)    all remuneration for salvage and towage services, demurrage and detention moneys and any other earnings whatsoever due or to become due to the undersigned arising from the use or employment of the Vessel;

(iii)    all moneys or other compensation payable by reason of requisition for title or for hire or other compulsory acquisition of the Vessel; and

(iv)    all proceeds of all of the foregoing.

(b)    until further notice by the Assignee, that you are hereby irrevocably authorized and instructed to pay as from the date hereof all of such aforesaid moneys to the Assignee, for the account of the undersigned (Account No. _____), at the above address of the Assignee (or at such other place as the Assignee may direct).

DATED THIS ____ day of July, 2013.

ENJOY SHIPPING LTD.

By_____
Name:
**Title:**

SK 27089 0005 1395053 v2

**EXHIBIT 2**

## CONSENT AND AGREEMENT

The undersigned, being the sub-charterer of the Maltese flag vessel ENJOY (the "Vessel") from ENJOY SHIPPING LTD. (the "Demise Owner") under the Charterparty dated March 22, 2012 between the undersigned and the Owner (as at any time amended, the "Sub-Charter") which is the subject of an Assignment of Earnings (the "Assignment") by the Owner to OCTAVIAN MARITIME ENJOY LLC (the "Assignee"), in consideration of One Dollar lawful money of the United States of America to it in hand paid, hereby acknowledges notice of and agrees that it will make payment of all moneys due and to become due under the Sub-Charter directly to the Assignee to be credited to the account ~~of the undersigned (Account No. _____)~~listed below, until receipt of written notice from the Assignee to the contrary, provided, however, that this Consent and Agreement is without prejudice to any right which the undersigned may have under the Sub-Charter including but not limited to the rights to make deductions from payments of hire to the extent of claims which the undersigned may have against the Vessel under the Sub-Charter and in respect of which the undersigned is entitled to make deductions from charter hire pursuant to the relevant provisions of the Sub-Charter.

**Bank Account Details of the Assignee:**

| | |
|---|---|
| Bank: | Citibank N.A. 666 Fifth Avenue New York, NY 10103 |
| ABA: | 021000089 |
| Swift Code: | CITIU33 |
| Account Name: | Octavian Maritime Enjoy LLC |
| Account No.: | 9990583540 |

DATED THIS _____ day of _____, 2013.


                        CSSA, CHARTERING AND SHIPPING SERVICES SA


                        By_____
                          Name:
                          **Title:**

**EXHIBIT 3**

**Bank Account Details of the Assignee:**

| | |
|---|---|
| Bank: | Citibank N.A. 666 Fifth Avenue New York, NY 10103 |
| ABA: | 021000089 |
| Swift Code: | CITIU33 |
| Account Name: | Octavian Maritime Enjoy LLC |
| Account No.: | 9990583540 |

1  **COX, WOOTTON, GRIFFIN,**
   **HANSEN & POULOS, LLP**
2  Rupert P. Hansen (SBN 82302)
   Max L. Kelley (SBN 205943)
3  190 The Embarcadero
   San Francisco, CA 94105
4  Telephone No.: 415-438-4600
   Facsimile No.: 415-438-4601
5
6  Attorneys for Plaintiff OCTAVIAN MARKA LLC

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9  OCTAVIAN MARKA LLC,              )    Case No.:
                                    )
10              Plaintiff,          )    **IN ADMIRALTY**
                                    )
11      v.                          )    **STIPULATED APPLICATION FOR**
                                    )    **AN ORDER RELEASING THE *IN***
12  MARKA SHIPPING LTD.,** *in personam,* )  ***REM*** **DEFENDANT VESSEL FROM**
    and M/T MARKA, IMO no. 9512484, her )  **ARREST AND FOR DISMISSAL OF**
13  engines, tackle, gear, and appurtenances, *in* )  **ACTION**
    *rem,*                          )
14                                  )    **SUPP. F.R.C.P. E(5)(d) and**
                                    )    **F.R.C.P. 41 (a)**
15              Defendants.         )
                                    )
16                                  )
                                    )
17                                  )

18      Plaintiff OCTAVIAN MARKA LLC ("OCTAVIAN") and Claimant PANAMAX

19  INTERNATIONAL (P.I.) ("PANAMAX"), being all the parties to have appeared this case,

20  respectfully submit this Stipulated Application for an order: (1) releasing the *in rem*

21  defendant vessel M/T MARKA, IMO no. 9512484, her engines, tackle, gear, and

22  appurtenances ("Vessel") from the Arrest Warrant issued in the captioned action; and (2)

23  dismissing this action in its entirety, without prejudice.

24      This Stipulated Application is made by Plaintiff OCTAVIAN and Claimant

25  PANAMAX, pursuant to Rule E(5)(d) of the Supplemental Rules for Admiralty or Maritime

26  Claims and Asset Forfeiture Actions, of Federal Rules of Civil Procedure ("Supplemental

27  Rules"), and pursuant to Rule 41(a) of the Federal Rule of Civil Procedure.

28

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL: 415-438-4600
FAX: 415-438-4601

HS.Varano


EXHIBIT " **C** "

-1-

STIPULATED APPLICATION FOR DISMISSAL AND RELEASE OF VESSEL

Case No. CV-13-2863 SC

| | |
|---|---|
| 1 | **I.    BASIS FOR THIS APPLICATION** |
| 2 | On June 20, 2013, Plaintiff OCTAVIAN, the owner of the defendant Vessel, filed a |
| 3 | Verified Complaint ("Complaint") *in rem* against the Vessel and *in personam* against the |
| 4 | bareboat charterer of the Vessel, defendant MARKA SHIPPING LTD ("MARKA |
| 5 | SHIPPING"), as well as other pleadings required under Rule D of the Supplemental Rules, |
| 6 | seeking an order from this Court authorizing the U.S. Marshal ("Marshal") to arrest the |
| 7 | Vessel *in rem*. The Complaint alleged defendant MARKA SHIPPING had breached the |
| 8 | bareboat charter and invoked claims for possession of the Vessel under Rule D of the |
| 9 | Supplemental Rules. |
| 10 | The Court authorized the arrest on June 20, 2013, and the Vessel was arrested by the |
| 11 | Marshal the next day, June 21, 2013. Upon arrest, the Marshal transferred custody of the |
| 12 | Vessel to the duly-appointed substitute custodian, National Maritime Services ("Substitute |
| 13 | Custodian"). Since that time, the Vessel has been lying at anchor at Anchorage 9 in San |
| 14 | Francisco Bay under the safekeeping of the Substitute Custodian. As of this filing, neither |
| 15 | defendant MARKA SHIPPING nor defendant Vessel has appeared in the action or answered |
| 16 | the Complaint. The sub-charterer of the Vessel, claimant PANAMAX, filed a Verified |
| 17 | Statement of Interest ("Statement of Interest") on June 25, 2013. |
| 18 | A confidential settlement agreement resolving the disputes set forth in the Complaint |
| 19 | and Statement of Interest was subsequently reached. |
| 20 | //// |
| 21 | //// |
| 22 | //// |
| 23 | //// |
| 24 | //// |
| 25 | //// |
| 26 | //// |
| 27 | //// |
| 28 | //// |

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL: 415-438-4600
FAX: 415-438-4601

HS.Varano

-2-

STIPULATED APPLICATION FOR DISMISSAL AND RELEASE OF VESSEL

Case No. CV-13-2863 SC

THEREFORE, the undersigned parties respectfully request that the Court order that the defendant Vessel be released from arrest herein and from the custody of the Substitute Custodian National Maritime Services and the United States Marshal for the Northern District of California, upon satisfaction of the Substitute Custodian's fees and expenses of custody after deducting any deposit of Plaintiff OCTAVIAN MARKA LLC's, and upon payment of the Marshal's fees and costs of custody from the Plaintiff OCTAVIAN MARKA LLC's deposit with the Marshal, along with payment of any fees and costs of custoday in excess of Plaintiff's deposit that may be outstanding and unpaid; and that the instant action thereafter be dismissed without prejudice and without costs to either party.

A proposed form of order is attached as Exhibit "1" hereto, and is also being separately submitted with this Application for the Court's consideration.

Dated: July ___, 2013

COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP
Attorneys for Plaintiff OCTAVIAN MARKA LLC

By: _____
Rupert P. Hansen
Max L. Kelley

Dated: July ___, 2013

Defendant MARKA SHIPPING LTD.

By: _____
Name:
Title:

Dated: July ___, 2013

KEESAL, YOUNG & LOGAN
Attorneys for Interested Party PANAMAX INTERNATIONAL (P.I.)

By: _____
John D. Giffin
Jessica Luhrs

COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL: 415-438-4600
FAX: 415-438-4601

HS.Varamo

**MARKA SHIPPING CO.LTD.**

**01.01.2013 - 16.07.2013**

| | SUPPLIERS |
|---|---|
| 320.15.1024 | BOSUNG ENGINEERING CO.LTD. |
| 320.15.1048 | DET NORSKE VERITAS AS |
| 320.15.1050 | DNV PETROLEUM SERVICES PTE LTD |
| 320.15.1052 | DONGJIN INTEC CO. LTD. |
| 320.15.1058 | FENECH & FENECH |
| 320.15.1059 | GALLAGHER MARINE SYSTEMS |
| 320.15.1131 | SHORELINE MUTUAL (BERMUDA) LTD |
| 320.15.1132 | SINGTEL SINGAPORE TELECOMMUNICATIONS LTD |
| 320.15.1148 | WILHELMSEN SHIPS SERVICE |
| 320.15.1168 | OLYMPIC MARITIME INC. |
| 320.15.1212 | DECKHOUSE, LLC |
| 320.15.1225 | UNISERVICE/ILFE SHIPPING LTD. |
| 320.15.1236 | HEIDENREICH INNOVATIONS, LLC |
| 320.15.1355 | KELVIN HUGHES LTD. |
| 320.15.1380 | I T W F |
| 320.15.1441 | GAC SHIPPING (USA) INC. |
| 320.15.1486 | NATIONAL RESPONSE CORPORATION |
| 320.15.1756 | AMERICAN BUREAU OF SHIPPING |
| 320.15.1866 | DAD-DER DENİZ ÇALIŞANLARI DAYANIŞMA DERN |
| 320.15.1910 | THOMAS GUNN NAVIGATION SERVICES LTD. |
| 320.15.1953 | AXA CORPORATE SOLUTIONS |
| 320.15.2035 | TRANSMARINE NAVIGATION CORP.AS AGENTS |
| 320.15.2111 | ARROW TANKERS A/S |
| 320.15.2137 | SIPEX INSURANCE & REINSURANCE BROKERS S. |
| 320.15.2335 | EXTRONICS LTD |
| 320.15.2407 | MORAN TRANSPORTATION INDUSTRIES |
| 320.15.2467 | NORTON LILLY INTERNATIONAL |
| 320.15.2488 | NORTHERN LLOYD INSURANCE SERVICES |
| 320.15.2562 | VIKING LIFE - SAVING EQUIPMENT İSTANBUL |
| 320.15.2567 | RFIB GROUP LIMITED |
| 320.15.2877 | ISACOL S.A. |
| 320.15.2898 | C.B. FENTON&COMPANY,S.A. |
| 320.15.2948 | MARTEK MARINE LTD(FASTCALGAS) |
| 320.15.3002 | MERCANTILE SHIPSTORES, S.A. |
| 320.15.3110 | DPM (UK) -EUROPE LTD. |
| 320.15.3123 | DONGJOO MARINE SERVICE CO. |
| 320.15.3304 | DET NORSKE VERITAS GEMİ SINIFLANDIRMA VE |
| 320.15.3331 | TRANSAS MARINE INTERNATIONAL AB |
| 320.15.3344 | WORLD FUEL SERVICES EUROPE LTD. |
| 320.15.3398 | DONJON-SMIT, LLC |
| 320.15.3403 | WEST COAST SHIP SUPPLY |
| 320.15.3418 | SEMAR DENİZCİLİK VE ENDÜSTRİYEL ÜRÜNLER |
| 320.15.3438 | GARRETS INTERNATIONAL LTD |
| 320.15.3539 | SAN PEDRO HARBOR SHIP SUPPLY |
| 320.15.3637 | ALFA LAVAL AALBORG A/S |
| 320.15.3843 | BUNKERNET LTD |
| 320.15.3921 | SWIFT MARINE |
| 320.15.3966 | SSL INSURANCE BROKERS LTD |
| 320.15.3990 | MARSERVE, INC. |
| 320.15.4028 | ELSSI DRUG&ALCOHOL ANALYTICAL SOLUTIONS |
| 320.15.4049 | SKULD |
| 320.15.4171 | UNIVERSAL MARINE MEDICAL SUPPLY INTL |
| 320.15.4202 | WOSHIP MARITIME, S.L. |
| 320.15.4307 | OLIVE MARINE SYSTEM CORP. |
| 320.15.4324 | EP-FLOTA PETROLERA ECUATORIANA |
| 320.15.4325 | LDC-KOREA CO.LTD |
| 320.15.4426 | PHILLIPS 66 COMPANY |
| 320.15.4453 | REPRESENTACIONES NAVIERAS Y ADUANERAS S.A.CIA |
| 320.15.4488 | VESSEL NEEDS SAC |
| 320.15.4528 | JOTABE MARITIMA LTDA |
| 320.15.4546 | CHILE SERVICES MANAGEMENT |
| 320.15.4555 | JOWA USA, INC. |
| 320.15.4560 | ASSI GENOA OMNI(LUSITANIA) |
| 320.15.4561 | FOA & SON CORPORATION (NAVIGATORS) |
| 320.15.4621 | ELNET MARITIME COMPANY LTD. |
| 320.15.4679 | EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP |



EXHIBIT "D"

**ENJOY SHIPPING LTD.**

01.01.2013 - 16.07.2013

| | SUPPLIERS |
|---|---|
| 320.15.1024 | BOSUNG ENGINEERING CO.LTD. |
| 320.15.1048 | DET NORSKE VERITAS AS |
| 320.15.1050 | DNV PETROLEUM SERVICES PTE LTD |
| 320.15.1052 | DONGJIN INTEC CO. LTD. |
| 320.15.1058 | FENECH & FENECH |
| 320.15.1059 | GALLAGHER MARINE SYSTEMS |
| 320.15.1102 | NEKO SHIP SUPPLY B.V. |
| 320.15.1108 | ONLINE MARINE SERVICES |
| 320.15.1131 | SHORELINE MUTUAL (BERMUDA) LTD |
| 320.15.1132 | SINGTEL SINGAPORE TELECOMMUNICATIONS LTD |
| 320.15.1142 | TOTAL LUBRIFIANTS SA. |
| 320.15.1148 | WILHELMSEN SHIPS SERVICE |
| 320.15.1212 | DECKHOUSE, LLC |
| 320.15.1225 | UNISERVICE/ILFE SHIPPING LTD. |
| 320.15.1236 | HEIDENREICH INNOVATIONS, LLC |
| 320.15.1243 | FRANK MOHN A/S |
| 320.15.1245 | SHELL INTERNATIONAL TRADING AND SHIPPING |
| 320.15.1355 | KELVIN HUGHES LTD. |
| 320.15.1363 | INCHCAPE SHIPPING SERVICES |
| 320.15.1367 | INTERNATIONAL SHIPPING ENTERPRISE |
| 320.15.1380 | I T W F |
| 320.15.1437 | PANASIA CO LTD |
| 320.15.1486 | NATIONAL RESPONSE CORPORATION |
| 320.15.1514 | BOUTROS MARITIME&TRANSPORT S.A. |
| 320.15.1521 | TANKTECH CO. LTD. |
| 320.15.1568 | VIDEOTEL INTERNATIONAL |
| 320.15.1756 | AMERICAN BUREAU OF SHIPPING |
| 320.15.1866 | DAD-DER DENİZ ÇALIŞANLARI DAYANIŞMA DERN |
| 320.15.1910 | THOMAS GUNN NAVIGATION SERVICES LTD. |
| 320.15.1944 | ATN MARINE AND TRADING CO.,LTD |
| 320.15.1953 | AXA CORPORATE SOLUTIONS |
| 320.15.1984 | DVB BANK NV |
| 320.15.1985 | ARROW RESEARCH LTD |
| 320.15.2137 | SIPEX INSURANCE & REINSURANCE BROKERS S. |
| 320.15.2140 | ORIENTAL INSPECTION & SERVICE CO.LTD. |
| 320.15.2146 | NORTH OF ENGLAND P&I ASSOCIATION LIMITED |
| 320.15.2258 | L E WEST LIMITED |
| 320.15.2344 | ÖZSAY SATELLITE COMMUNICATIONS LTD. |
| 320.15.2407 | MORAN TRANSPORTATION INDUSTRIES |
| 320.15.2492 | TRANS-IT INTERNATIONAL TRANSPORT SYSTEM |
| 320.15.2567 | RFIB GROUP LIMITED |
| 320.15.2659 | CONSILIUM MARINE AB |
| 320.15.2712 | STRAITS MARINE SUPPLY PTE LTD. |
| 320.15.2722 | WILHELMSEN SHIPS (AGENCY) |
| 320.15.2758 | ZETA SHIPPING AGENCY CO.LTD. |
| 320.15.2788 | TAMROTOR MARINE COMPRESSORS |
| 320.15.2822 | MARES SHIPPING GMBH |
| 320.15.2926 | MCQUILLING PARTNERS, INC. |
| 320.15.2938 | IMPA MARINE PTE LTD. |
| 320.15.2948 | MARTEK MARINE LTD(FASTCALGAS) |
| 320.15.2956 | MAN DIESEL & TURBO SE |
| 320.15.3110 | DPM (UK) -EUROPE LTD. |
| 320.15.3178 | MARISEC PUBLICATIONS |
| 320.15.3296 | TEHO ROPES & SUPPLIES PTE LTD |
| 320.15.3331 | TRANSAS MARINE INTERNATIONAL AB |
| 320.15.3398 | DONJON-SMIT, LLC |
| 320.15.3418 | SEMAR DENİZCİLİK VE ENDÜSTRİYEL ÜRÜNLER |
| 320.15.3438 | GARRETS INTERNATIONAL LTD |
| 320.15.3540 | HAIRONGFA MARINE SERVICE CO.LTD. |
| 320.15.3614 | WILHELM RUMP KG |
| 320.15.3622 | NAVIOS TANKERS MANAGEMENT INC. |
| 320.15.3637 | ALFA LAVAL AALBORG A/S |
| 320.15.3752 | UNIMASTER SHIPPING CO. |
| 320.15.3804 | KUSA MARINE CO. |
| 320.15.3921 | SWIFT MARINE |
| 320.15.3931 | EH ENGINEERING CO. LTD |
| 320.15.3958 | HANLA IMS CO. LTD |
| 320.15.3966 | SSL INSURANCE BROKERS LTD |
| 320.15.3997 | DIAPLOUS MARITIME SERVICES LTD. (ANGELOS |
| 320.15.4049 | SKULD |
| 320.15.4171 | UNIVERSAL MARINE MEDICAL SUPPLY INTL |
| 320.15.4307 | OLIVE MARINE SYSTEM CORP. |
| 320.15.4321 | KT OCEAN CO. |
| 320.15.4325 | LDC-KOREA CO.LTD |
| 320.15.4357 | FAISAL M.HIGGI GROUP |
| 320.15.4410 | ANCHOR MARINE SUPPLIES PTE LTD |
| 320.15.4427 | RIC MARINE PTE LTD |
| 320.15.4497 | HAMBURGER TECHNIK SERVICE GMBH |
| 320.15.4535 | CONVEYOR SHIPPING AGENCIES INC |
| 320.15.4560 | ASSI GENOA OMNI(LUSITANIA) |
| 320.15.4561 | FOA & SON CORPORATION (NAVIGATORS) |
| 320.15.4683 | FIUMICINO SHIPPING AGENCY SRL |

EXHIBIT "___"